**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No:

THE ESTATE OF JOHN PATRICK WALTER,
by and through its special administrator, DESIREE' Y. KLODNICKI,

   Plaintiff,

v.

CORRECTIONAL HEALTHCARE COMPANIES, INC.;
CORRECTIONAL HEALTHCARE MANAGEMENT, INC.;
HEALTHCARE PROFESSIONALS, LLC;
CORRECT CARE SOLUTIONS, LLC;
ADVANCED CORRECTIONAL HEALTHCARE, INC.;
CORRECTIONAL HEALTHCARE PHYSICIANS, P.C.;
CORRECTIONAL HEALTHCARE PHYSICIANS, II, P.C.;
CHC COMPANIES, INC.;
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FREMONT;
JAMES BEICKER, individually and in his official capacity as Fremont County Sheriff;
TY MARTIN, individually and in his official capacity as Fremont County Undersheriff;
RAYMOND HERR, M.D., individually;
STEPHANIE REPSHIRE, LPN, individually;
KATHLEEN MAESTAS, LPN, individually;
SHARON ALLEN, M.D., individually;
JOHN RANKIN, individually;
CARRIE HAMMEL, individually;
MICHAEL GIRTEN, individually;
MICHAEL ULRICH, individually;
ROBERT MILLER, individually;
JUSTIN GREEN, individually;
GREG OWEN, individually;
DUSTIN MAAS, individually;
RICHARD SALANO, individually;
GLENN ANDERSON, individually;
BILLIE BELL, individually;
DEPUTY TURNER, individually;
BALEY SANDEFUR, individually;
ELOYSA TRUJILLO, individually;
LILA CLEMMERSON, individually;

1

BRAXTON BUFFINGTON, individually;
CHARLENE COMBS, individually;
JORDAN PENN, individually
SARA LIGHTCAP, individually;
DAVID GREEN, individually;
JOSHUA POHL, individually;
MACKENZIE ROQUEMORE, individually;
ASHLEY RAMEY, individually;
RANDALL CULLEN, individually;
PERRY BURFORD, individually;
CAMERON GONZALES, individually;
LEE COOK, individually;
JAMES WHEATON, individually;
JOHN DOES 1-10, individually;
JANE DOES 1-10, individually;
DOE CORPORATIONS 1-10;

     Defendants.

_____

## CIVIL RIGHTS COMPLAINT AND JURY DEMAND
_____

     Plaintiff, the Estate of John Patrick Walter by and through its special administrator, Desiree' Y. Klodnicki, as represented by her attorneys, Edwin S. Budge and Erik J. Heipt of Budge & Heipt, P.L.L.C., complains against defendants and request a trial by jury as follows:

### I.     INTRODUCTION

     1.     This is a civil rights action under 42 U.S.C. § 1983 resulting from events that happened during the pre-trial detention of John Patrick Walter at the Fremont County Detention Center in Cañon City, Colorado.

     2.     The events that gave rise to this complaint began on April 3, 2014 and culminated in the unnecessary death of Mr. Walter 17 days later on April 20, 2014. Defendants caused Mr.

Walter's death by repeatedly violating his rights under the Fourteenth Amendment to the United States Constitution.

3.     Defendants' unconstitutional actions included confiscating and discontinuing Mr. Walter's prescription medication, forcing him to go "cold turkey" and into life-threatening drug withdrawal, utterly neglecting his severe and potentially fatal withdrawal symptoms, allowing him to descend into a state of acute withdrawal psychosis, failing to protect him from self-harm, using brutal and excessive force in response to his medical condition rather than providing him with desperately needed medical care, inflicting serious injuries upon him, ignoring his serious physical injuries and critical mental health needs, failing to ensure adequate nourishment and hydration despite his own inability to meet those essential needs, disregarding his obvious malnourishment and dehydration, detaining him under inhumane conditions of confinement, otherwise forcing him to endure extreme and needless pain and suffering, and causing his death.

4.     Following this senseless tragedy, Fremont County embarked on an effort to cover up the circumstances surrounding the death of John Patrick Walter. Though its agents and officials, Fremont County knowingly conducted a sham and fraudulent death investigation to conceal the unconstitutional conduct alleged herein. It also wrongfully withheld critical information from Mr. Walter's next of kin, attorneys retained by his family, and public officials responsible for determining the cause of his death.

## II.      JURISDICTION AND VENUE

5.     This Court has original subject matter jurisdiction over the plaintiff's civil rights claims under 42 U.S.C. § 1983, pursuant 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

6.     This Court has personal jurisdiction over all of the named defendants because they either reside in the State of Colorado and/or do systematic and continuous business in Colorado.

7.     Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because all of the events that support the plaintiff's allegations occurred in this judicial district and because the defendants reside in this judicial district.

## II.     PARTIES

### A.     <u>Plaintiff</u>

8.     Plaintiff is the Estate of John Patrick Walter by and through its court-appointed special administrator, Desiree' Y. Klodnicki. John Patrick Walter was a United States Citizen and a resident of the State of Colorado. He died in the Fremont County Detention Center on April 20, 2014 at the age of 53. The Estate of John Patrick Walter was duly formed under the laws of the State of Colorado. Its special administrator, Ms. Klodnicki, is a United States Citizen and a Colorado resident.

### B.     <u>Fremont County Defendants</u>

9.     Fremont County is a governmental entity chartered under the laws of the State of Colorado. Among other things, Fremont County operates the Fremont County Detention Center, located at 100 Justice Center Rd. in Cañon City, Colorado. The Fremont County Detention Center is a jail that confines pre-trial detainees and convicted prisoners. All pre-trial detainees confined in the jail are entitled to protection under the Fourteenth Amendment to the United States Constitution.

10.     Defendant Board of County Commissioners of the County of Fremont represents, oversees, and sets policy for Fremont County Colorado. Under Colo. Rev. Stat. § 30-11-105, the Board of County Commissioners of the County of Fremont is the proper party to name in an action against Fremont County.

11.     Defendant James Beicker, in his official capacity, is the Fremont County Sheriff and is a final policymaker for Fremont County with respect to all matters concerning the Fremont County Sheriff's Office (FCSO) and all of its divisions, including the Fremont County Detention Center.

12.     Defendant Ty Martin, in his official capacity, is the Fremont County Undersheriff and is a final policymaker for the county with respect to all matters concerning operations of the Fremont County Detention Center.

13.     Collectively, the Board of County Commissioners, Sheriff Beicker (in his official capacity), and Undersheriff Martin (in his official capacity) are referred to as "Fremont County" or as the "Fremont County Defendants."

14.     Fremont County contracted with one or more private individuals and corporate entities to provide medical care and other services to its population of pre-trial detainees and post-conviction prisoners. Although the county sought to privatize the provision of healthcare services to these individuals and for-profit businesses, it cannot contract-away its constitutional obligations and is legally liable for the constitutional violations committed by such providers.

C.     **Corporate Defendants**

15.     The intent of the following paragraphs is to identify all corporate entities with which Fremont County contracted, and/or with which subcontracts were made, to provide

medical care and/or mental health services to pretrial detainees and inmates at the Fremont County Detention Center during the period in question.

16.     Defendant Correctional Healthcare Companies, Inc. is a Delaware corporation with its principal street address located at 6200 S. Syracuse Way, Suite 440, Greenwood Village Co., 80111. Its registered agent for service of process is Corporate Creations Network, Inc. located at 3773 Cherry Creek North Drive # 575, Denver, CO 80209. On information and belief, this company contracts with Fremont County through a direct contract or sub-contract with another or related entity to provide medical services to inmates and pretrial detainees at the Fremont County Detention Center and supervises and implements such care.

17.     Defendant Correctional Healthcare Management, Inc. is the registered trade name for Correctional Healthcare Companies, Inc., a Delaware corporation with its principal street address located at 6200 S. Syracuse Way, Suite 440, Greenwood Village Co., 80111. Its registered agent for service of process is Corporate Creations Network, Inc. located at 3773 Cherry Creek North Drive # 575, Denver, CO 80209. On information and belief, this company contracts with Fremont County through a direct contract or sub-contract with another or related entity to provide medical services to inmates and pretrial detainees at the Fremont County Detention Center and supervises and implements such care.

18.     Defendant Healthcare Professionals, LLC is a Colorado limited liability company with its principal street address at 1283 Murfreesboro Rd., Suite 500, Nashville, TN 37217. Its registered agent for service of process is Corporate Creations Network, Inc. located at 3773 Cherry Creek North Drive # 575, Denver, CO 80209. On information and belief, this company contracts with Fremont County through a direct contract or sub-contract with another or related

entity to provide medical services to inmates and pretrial detainees at the Fremont County Detention Center and supervises and implements such care.

19.     Defendant Correct Care Solutions, LLC is a Missouri or Kansas limited liability company with its principal street address at 1283 Murfreesboro Rd., Suite 500, Nashville, TN 37217. Its registered agent for service of process is Corporate Creations Network, Inc. located at 3773 Cherry Creek North Drive # 575, Denver, CO 80209. On information and belief, this company contracts with Fremont County through a direct contract or sub-contract with another or related entity to provide medical services to inmates and pretrial detainees at the Fremont County Detention Center and supervises and implements such care.

20.     Defendant Advanced Correctional Healthcare, Inc. is an Illinois corporation with its principal street address at 3922 W. Baring Trace, Peoria, IL 61615. Its registered agent for service of process is The Corporation Company, 1675 Broadway, Suite 1200, Denver, CO 80202. On information and belief, this company contracts with Fremont County through a direct contract or sub-contract with another or related entity to provide medical services to inmates and pretrial detainees at the Fremont County Detention Center and supervises and implements such care.

21.     Defendant CHC Companies, Inc. is a Delaware corporation with its principal street address at 1283 Murfreesboro Rd., Suite 500, Nashville, TN 37217. Its registered agent for service of process is Corporate Creations Network, Inc. located at 3773 Cherry Creek North Drive # 575, Denver, CO 80209. On information and belief, this company contracts with Fremont County through a direct contract or sub-contract with another or related entity to

provide medical services to inmates and pretrial detainees at the Fremont County Detention Center and supervises and implements such care.

22.     Defendant Correctional Healthcare Physicians, P.C. is a Colorado corporation with its principal street address at 1283 Murfreesboro Rd., Suite 500, Nashville, TN 37217. Its registered agent for service of process is Corporate Creations Network, Inc. located at 3773 Cherry Creek North Drive # 575, Denver, CO 80209. On information and belief, this company contracts with Fremont County through a direct contract or sub-contract with another or related entity to provide medical services to inmates and pretrial detainees at the Fremont County Detention Center and supervises and implements such care.

23.     Defendant Correctional Healthcare Physicians, II, P.C. is a Missouri corporation with its principal street address at 1283 Murfreesboro Rd., Suite 500, Nashville, TN 37217. Its registered agent for service of process is Corporate Creations Network, Inc. located at 3773 Cherry Creek North Drive # 575, Denver, CO 80209. On information and belief, this company contracts with Fremont County through a direct contract or sub-contract with another or related entity to provide medical services to inmates and pretrial detainees at the Fremont County Detention Center and supervises and implements such care.

24.     Collectively, the corporate entities named in this lawsuit and identified in the preceding paragraphs are referred to as the "Corporate Defendants."

25.     Upon entering into contracts and/or subcontracts to provide medical and/or other services to Fremont County Detention Center detainees, the Corporate Defendants were assuming public functions, acting under color of state law, and legally responsible to comply

with all requirements of the United States Constitution. Each of the Corporate Defendants is considered a "person" and is properly sued under 42 U.S.C. § 1983.

**D.**   **Individual Defendants**

    **1.**   **Medical Providers**

26.   Defendant Raymond Herr, M.D. is an individual residing in the State of Colorado. Defendant Herr was an agent, employee, and/or subcontractor of one or more of the corporate or Fremont County defendants and was responsible for providing medical care to John Patrick Walter during his pretrial detention. At all material times, this defendant was acting under color of state law.

27.   Defendant Stephanie Repshire, LPN is an individual residing in the State of Colorado. Defendant Repshire was an agent, employee, and/or subcontractor of one or more of the corporate or Fremont County defendants and was responsible for providing medical care to John Patrick Walter during his pretrial detention. At all material times, this defendant was acting under color of state law.

28.   Defendant Kathleen Maestas, LPN is an individual residing in the State of Colorado. Defendant Maestas was an agent, employee, and/or subcontractor of one or more of the corporate or Fremont County defendants and was responsible for providing medical care to John Patrick Walter during his pretrial detention. At all material times, this defendant was acting under color of state law.

29.   Defendant Sharon Allen, M.D. is an individual residing in the State of Colorado. Defendant Allen was an agent, employee, and/or subcontractor of one or more of the corporate or Fremont County defendants and was responsible for providing medical care to John Patrick

Walter during his pretrial detention. At all material times, this defendant was acting under color of state law.

### 2.    FCSO Detention Personnel

30.    Defendant James Beicker is an individual residing in the State of Colorado. Defendant Beicker is the Fremont County Sheriff. In addition to naming Sheriff Beicker in his official capacity, plaintiff is also naming him in his individual capacity. At all material times, Sheriff Beicker was an agent and/or employee of Fremont County, responsible for overseeing the Fremont County Detention Center, and acting under color of state law.

31.    Defendant Ty Martin is an individual residing in the State of Colorado. Defendant Martin is the Fremont County Undersheriff. In addition to naming Undersheriff Martin in his official capacity, plaintiff is also naming him in his individual capacity. At all material times, Undersheriff Martin was an agent and/or employee of Fremont County, responsible for overseeing the Fremont County Detention Center, and acting under color of state law.

32.    Defendant John Rankin is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

33.    Defendant Carrie Hammel is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

34.    Defendant Michael Girten is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

35.     Defendant Michael Ulrich is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

36.     Defendant Robert Miller is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

37.     Defendant Justin Green is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

38.     Defendant Greg Owen is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

39.     Defendant Dustin Maas is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

40.     Defendant Richard Salano is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

41.     Defendant Glenn Anderson is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

42.     Defendant Billie Bell is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

43.     Defendant Turner, whose first name is unknown, is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

44.     Defendant Baley Sandefur is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

45.     Defendant Eloysa Trujillo is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

46.     Defendant Lila Clemmerson is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

47.     Defendant Braxton Buffington is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

48.     Defendant Charlene Combs is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

49.     Defendant Jordan Penn is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

50.     Defendant Sara Lightcap is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

51.     Defendant David Green is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

52.     Defendant Joshua Pohl is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

53.     Defendant Mackenzie Roquemore is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

54.     Defendant Ashley Ramey is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

55.     Defendant Randall Culllen is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

56.     Defendant Perry Burford is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

57.     Defendant Cameron Gonzales is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

58.     Defendant Lee Cook is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

59.     Defendant James Wheaton is an individual residing in the State of Colorado. At all material times, this defendant was an agent and/or employee of Fremont County, working at the Fremont County Detention Center, and acting under color of state law.

**E.      Unkown Defendants to Be Named**

60.     Fremont County, through its representatives and agents, including Defendants Beicker and Martin, wrongfully concealed and withheld important information from public officials, decedent's next of kin, and attorneys representing his family—making it impossible to identify additional defendants as of the filing of this complaint.

61.     Following the death of John Patrick Walter, multiple lawful requests for information were issued to the Fremont County Sheriff's Office. This included requests from the Fremont County Coroner, the Fremont County Deputy Coroner, the El Paso County Medical Examiner, family members of Mr. Walter, and attorneys representing his family.

62.     By conducting a fraudulent investigation and by refusing to provide relevant information in response to these lawful requests, it was the intent of Fremont County and its representatives to deprive interested parties from learning material information that would have shown, among other things, the identity of individuals and entities who inflicted constitutional violations against John Patrick Walter, the full nature and extent of those violations, and information that would have shed light on the cause of Mr. Walter's death.

63.     Fremont County and its agents, including Defendants Beiker and Martin, withheld and continue to withhold, *inter alia*, video recordings of the events in question and critical materials and information identifying who was involved, when such involvement occurred, and the nature of the involvement of individuals.

64.     It is anticipated that plaintiff will amend this complaint by naming those parties identified in discovery as proper defendants. At this time, plaintiff notifies defendants of the intent to amend the complaint to add the following:

A.     The person whose signature reads as follows in the Providers' Orders dated April 3, 2014:



Defendants know who this individual is and should notify that person of the pendency of this action.

B.     Fremont County Detention Center officers who can only be identified at present by their numbers on the Fremont County Detention Center "Inmate welfare check list"

and other jail documents: Nos. 214, 217, 218, 331, 339, 342, 350, 352, P-195. Fremont County knows who these individuals are and should notify them of the pendency of this action.

      C.     John and Jane Does 1-10, whose identities are not presently known because of Fremont County's fraudulent and wrongful concealment of information.

      D.     Doe Corporations 1-10, whose identities are not presently known because of Fremont County's fraudulent and wrongful concealment of information.

### III.    FACTUAL ALLEGATIONS

**A.**    <u>**Facts Applicable to All Defendants**</u>

65.    Klonopin is a psychotropic prescription medication within a group of drugs called benzodiazepines. Generically known as Clonazepam, Klonopin is commonly prescribed by physicians to treat anxiety disorders and various other mental and physical conditions. Klonopin is highly addictive. Individuals who regularly use Klonopin over time become physically dependent on the medication. When a person who is physiologically dependent on Klonopin abruptly stops taking the medication or reduces the dosage too quickly, he or she will go into withdrawal.

66.    Benzodiazepine (or "benzo") withdrawal is a serious medical condition that can be life-threatening if not treated appropriately. All reasonable health care providers, including those in the field of corrections, are aware of the symptoms of benzo withdrawal and its potentially fatal consequences. Symptoms of serious benzo withdrawal can include, among other things, abnormal vital signs, acute GI distress, loss of appetite and weight loss, profound disturbances in sleep, severe anxiety and panic, mood swings, paranoia, extreme restlessness and

agitation, tremors, hyperthermia, excessive perspiration, bizarre behavior, confusion and cognitive difficulties, hallucinations, delirium, psychosis, and seizures.

67.     Benzo withdrawal is physically, mentally, and emotionally torturous in the extreme. Depending on the nature of the benzodiazepine, the dosage and duration of use, and other individual circumstances, benzo withdrawal syndrome can be drawn out over a period of 5 to 28 days—with symptoms peaking roughly two weeks following the discontinuance or abrupt reduction in the medication. Acute, late-stage benzodiazepine withdrawal is a serious medical emergency, which carries a well-recognized and significant risk of death, and requires hospitalization.

68.     Upon admission to any correctional facility, it is essential to identify any person who may be using a benzodiazepine in order to prevent serious complications and/or death. Due to the extraordinary risks associated with benzo withdrawal, a person's Klonopin dosage should never be abruptly discontinued or even reduced without a carefully controlled plan of gradual dose reduction instituted under the guidance of trained medical personnel—with close medical monitoring in an appropriate setting. Every medical provider in a county correctional facility must know the risks of benzo withdrawal and must be able to recognize the signs and symptoms thereof. Non-medical detention staff must also be aware of the signs, symptoms, and potentially fatal consequences of benzo withdrawal.

69.     For many years, John Patrick Walter was under the care of medical providers who prescribed him Klonopin. He took this prescription medication continuously in doses that gradually increased over time. As of April 2014, Mr. Walter was taking approximately 6 mg of Klonopin per day pursuant to his prescription. He was physiologically dependent on the

medication and at serious risk for benzo withdrawal should it be abruptly discontinued or the dosage reduced too quickly.

70.     On April 3, 2014, Mr. Walter was arrested by FCSO officers and taken to the Fremont County Detention Center where he was booked and confined. At all material times following his arrest, Mr. Walter was a pre-trial detainee who had not been convicted of any crime. He was presumed innocent in the eyes of the law, awaiting trial, and entitled to all applicable constitutional protections—including those afforded to him under the Fourteenth Amendment to the United States Constitution.

71.     When he was arrested and taken to the Fremont County Detention Center on April 3, 2014, Mr. Walter was in the lawful possession of several bottles of prescription medication. The bottles were properly and clearly labeled. Two of them contained his prescribed Klonopin. Mr. Walter was also in the lawful possession of a prescription for Methadone, which is an opioid used to treat pain and/or as maintenance therapy for individuals with opioid dependence.

72.     Upon his arrival at the Fremont County Detention Center, Mr. Walter was provided with a "Pre-Admission Medical Screen" form to fill out. The purpose of the form was to alert medical providers and jail personnel of various issues of medical concern.

73.     Mr. Walter wrote on the form that he was on "medication prescribed by a doctor." He then clearly indicated that this medication consisted of "Klonopin" and also identified his Methadone prescription. When asked whether he was "carrying any medication," Mr. Walter clearly and unambiguously indicated "Yes" and further indicated that this medication consisted of "Klonopin" and Methadone. Mr. Walter completed the form by identifying the name of his medical provider and his source of health insurance.

74.     Mr. Walter weighed more than 200 pounds and had no indications of physical injury (other than general "back pain") upon his admission to the Fremont County Detention Center.

75.     At or near the time of his booking, Mr. Walter's prescribed Klonopin was confiscated from him and delivered into the custody of "medical" by unknown members of the Fremont County Sheriff's Office.

76.     Despite knowing that Mr. Walter was taking prescription Klonopin and despite being aware of the serious risks associated with discontinuing this medication, defendants did not follow basic and well-known cautionary steps that should be taken whenever a detainee enters with a benzodiazepine prescription. Defendants did not seek to learn information from Mr. Walter, his medical provider, his pharmacies, or any other source about how long he had been taking Klonopin, his dosage over time, any history associated with efforts to reduce his Klonopin dosage (and the consequences thereof), or any other information concerning his use of this medication.

77.     Instead, they unilaterally made a deliberate choice to discontinue Mr. Walter's Klonopin abruptly—without any tapering or substitute medication. Defendants made this choice without a plan instituted under the guidance of appropriate medical personnel and without close medical monitoring in an appropriate setting. They did not take his vital signs or observe him for withdrawal-related symptoms. They literally did nothing to address the significant risks that they knew would result from his Klonopin withdrawal.

78.     Predictably, in the ensuing days, Mr. Walters descended into a state of benzo withdrawal. A host of serious medical symptoms developed and steadily worsened throughout

his confinement. The symptoms, which caused him to endure extraordinary suffering, included, but were not limited to acute gastrointestinal distress, lack of appetite and dramatic weight loss, incontinence, confusion, disorientation as to time and place, bizarre behavior, severe anxiety and panic, rapid mood swings, extreme restlessness and agitation, profound insomnia, delusional thinking, paranoia, hallucinations, delirium, tremors, twitching, incontrollable shaking, and seizures. Because of their association with benzo withdrawal, most of these symptoms constituted life-threatening medical emergencies—requiring immediate hospitalization. But even in the absence of benzodiazepine withdrawal, such symptoms would independently constitute objectively serious medical needs.

79.     For example, medical providers and detention personnel, including the individual defendants named in this complaint, could see that Mr. Walter was not eating his meals or drinking sufficient fluids and that he was "growing weaker" and wasting away right in front of them. He was plainly suffering from severe malnutrition, extreme calorie deficit, and dehydration. Mr. Walter lost more than 30 pounds in body weight, and his "diminishing size" was visible and apparent to every individual defendant who regularly saw him during his 17-day confinement. The degree of malnourishment and dehydration from which Mr. Walter was suffering constituted an obvious and objectively serious medical need, and the individual defendants were deliberately indifferent to that need.

80.     Medical providers and FCSO detention personnel, including the individual defendants named in this complaint, could also see that Mr. Walter was incontinent and had lost bowel control, likely defecating and/or urinating on himself or in his surroundings, causing his single cell to "smell" even to hallway observers. They also saw him sweating, twitching,

trembling, and lying on the floor while uncontrollably shaking and, most likely, suffering from repeated seizures. These symptoms constituted an obvious and objectively serious medical need, and the individual defendants were deliberately indifferent to that need.

81.     Medical providers and detention personnel, including the individual defendants named in this complaint, additionally saw Mr. Walter "acting very, very strange," talking to himself and others who were not there, and speaking nonsensically about events that did not take place. They saw that he was disoriented as to time and place and confused about where he was, why he was there, and what was happening to him. When Mr. Walter was booked in the jail, he was able to fill out a form and wrote down the correct date (April 3, 2014); yet, two weeks later, he thought it was "February" and believed he was in a "community hospital" instead of a jail. For days on end, defendants watched him go without sleep and observed him regularly pacing in his cell, "rolling around on the floor and yelling," and otherwise exhibiting signs of extreme restlessness and anxiety. They saw him repeatedly removing his clothing and, at times, writhing on the cold floor, naked. They knew he was actively hallucinating and delusional. They literally watched him descend into a state of psychosis. Mr. Walter's psychotic break from reality was so profound that he was often heard screaming and seen kicking, punching, and clawing at the walls and door in an apparent effort to escape imaginary people in his cell. Mr. Walter's deteriorating mental health symptoms constituted an objectively serious medical need, and the individual defendants were deliberately indifferent to that need.

82.     In response to Mr. Walter's ongoing mental health crisis, which was caused by the abrupt and unconstitutional discontinuation of his prescribed medication, jail personnel, including the individual defendants named in this complaint, repeatedly used extreme and

objectively unreasonable force on Mr. Walter. This included, but was not limited to, pepper spraying him, tasing him, forcibly strapping him into a restraint chair, and using multiple forms of hands-on physical force—some of which was sufficient to cause subcutaneous contusions, broken bones, and internal bleeding.

83.     Because of his diminished mental capacity, resulting from his withdrawal-related psychosis, Mr. Walter's was clearly unable to understand or respond rationally to commands from jail personnel. Yet, throughout his confinement, the defendants repeatedly used his so-called non-compliance to justify the use of force on him. This was objectively unreasonable, caused extreme and unnecessary pain and suffering, and may have contributed to his death.

84.     After his death, Mr. Walter was found by the Fremont County Coroner and the El Paso County Medical Examiner to have numerous abrasions and contusions all over his body, including his forehead, scalp, right ear, chest, upper back, shoulders, arms, wrists, fingers, buttocks, thighs, knees, ankles, shins, feet, toes, toenails, and heels. He also had subcutaneous hemorrhaging of his spine hip, and shoulder, at least nine broken ribs with significant surrounding hemorrhage, internal bleeding, and other significant injuries.

85.     The foregoing injuries occurred during Mr. Walter's pretrial detention and were the result of Mr. Walter's benzo withdrawal and of defendants' objectively unreasonable force. Some of the injuries, such as those to his hands, fingers, feet, and toes, may have been self-inflicted due to his withdrawal-induced psychosis. Other injuries, including some of the severe bruising, broken ribs, and internal bleeding were likely caused by the defendants' unreasonable use of force.

86.     Regardless of exactly how Mr. Walter sustained such injuries, they constituted serious medical needs and necessitated medical attention. The wounds were visible to medical providers and FCSO detention staff, including all of the individual defendants identified herein. Nevertheless, defendants were deliberately indifferent to Mr. Walter's serious medical needs and failed to obtain any medical care for him.

87.     On April 20, 2014, Mr. Walter was found dead, naked on the floor of his cell. His death was caused by the unconstitutional conduct alleged herein. The conditions in which Mr. Walter was confined were inhumane in the extreme, beyond all bounds of human decency, and in violation of his constitutional rights. From the beginning of his pretrial detention on April 3, 2014 until his death on April 20, 2014, Mr. Walter's Fourteenth rights were continuously and repeatedly violated by the defendants named herein—resulting in 17 days of mental and physical agony, causing and culminating in his death, and giving rise to this action under 42 U.S.C. § 1983.

88.     All of the individual defendants named in this complaint acted with deliberate indifference to Walter's serious medical needs and/or used objectively unreasonable force on him. All acts and omissions committed by the defendants were committed with malice or with reckless disregard for Mr. Walter's constitutional rights.

89.     Mr. Walter's damages were the direct and foreseeable result of the defendants' actions and inactions alleged herein.

**B.      Facts Applicable to the Fremont County Defendants**

90.     The unconstitutional conduct alleged herein was carried out in accordance with the official policies, procedures, and customs of Fremont County. Fremont County maintained

constitutionally deficient screening policies and procedures that were inadequate to protect detainees, like Mr. Walter, from the serious medical consequences of benzodiazepine withdrawal. Fremont County also maintained unconstitutional policies and procedures for managing individuals who were going through benzo withdrawal and withdrawal from other prescription medication.

91.     Fremont County failed to adequately train and/or supervise its personnel and contracted-for providers with regard to complying with constitutionally-minimal rights of confined persons to medical care, food, water, humane conditions of confinement, and the right to be free from excessive force. This includes the county's deliberate choice not to provide training on the subject of benzodiazepine withdrawal and withdrawal from other prescription medication. It also includes the County's failure to provide training on managing and responding to detainees who are in a mental health crisis, such as an individual who is suffering from acute withdrawal psychosis.

92.     Fremont County engaged in a pattern, practice, or custom of unconstitutional conduct toward confined persons with serious medical and mental health needs. This includes a pattern, practice, or custom of not securing medical care for detainees who are suffering from withdrawal, physical injuries, mental health crises, dehydration, and/or malnourishment, as well as a pattern, practice, or custom of using objectively unreasonable and excessive force on such individuals.

93.     Fremont County ratified the unconstitutional conduct of its employees and/or agents, failed to investigate and/or conducted a sham "death investigation" into the death of John Walter, and attempted to cover up the unconstitutional conduct by wrongfully withholding

material information from the decedent's family and their attorneys in response to repeated records requests and from public officials entrusted with determining the cause of Mr. Walter's death.

94.     The actions and inactions of the Fremont County Defendants were done under color of state law and were the direct and proximate cause of Mr. Walter's damages.

**C.     Facts Applicable to the Corporate Defendants**

95.     The Corporate Defendants maintained unconstitutional policies, procedures, and customs. This includes constitutionally deficient screening policies and procedures that were inadequate to protect detainees, like Mr. Walter, from the serious medical consequences of benzodiazepine withdrawal. The Corporate Defendants also maintained unconstitutional policies and procedures for managing individuals who were going through benzo withdrawal and withdrawal from other prescription medication. The Corporate Defendants further maintained constitutionally inadequate policies and procedures related to communication amongst its medical providers and between its medical providers and detention personnel regarding detainees who are at risk of benzo withdrawal or who are actively withdrawing from a benzodiazepine.

96.     The Corporate Defendants failed to adequately train and/or supervise their personnel, agents, and or subcontractors with regard to complying with constitutionally-minimal rights of confined persons to medical care, food, and water. This includes their deliberate choice not to provide training on the subject of benzodiazepine withdrawal and withdrawal from other prescription medication. It also includes their failure to provide training on managing and responding to detainees who are in a mental health crisis, such as individuals suffering from acute benzo withdrawal psychosis.

97.     The Corporate Defendants engaged in and permitted to exist a pattern, practice, or custom of unconstitutional conduct toward confined persons with serious medical needs, including failing to secure medical care for such individuals. This includes a pattern of not securing medical care for detainees who are suffering from benzodiazepine withdrawal, physical injuries, mental health crises, dehydration, and/or malnourishment.

98.     The Corporate Defendants ratified the unconstitutional conduct of its employees, agents, and/or subcontractors with regard to the unconstitutional conduct visited upon Mr. Walter.

99.     All acts or omissions committed by the Corporate Defendants were done under color of state law.

100.     All acts or omissions committed by the Corporate Defendants were the direct and proximate cause of Mr. Walter's damages.

101.     All acts or omissions committed by the Corporate Defendants were committed with malice or with reckless disregard for Mr. Walter's constitutional rights.

**D.     Facts Applicable to Individual Defendants with Supervisory Authority**

102.     Certain individual defendants named in this lawsuit played a supervisory role over other individuals (including, but not limited to, other individual defendants) working at the Fremont County Detention Center between April 3, 2014 and April 20, 2014. This includes Defendant Herr and any other named (or unknown) defendants who had supervisory responsibilities over other medical providers working at the Fremont County Detention Center during the time period in question. It also includes Defendants Beicker and Martin (in their individual capacities), as well as Defendants Rankin, Hammel, Girten, Ulrich, Miller, J. Green,

Owen, Maas, Salano, Anderson, and any other named (or unknown) defendants who had supervisory responsibilities over other jail personnel working at the Fremont County Detention Center during the time period in question.

103.    These individuals either actively participated in the conduct described in this complaint or they acquiesced in the constitutionally offensive conduct by personally directing it, tacitly authorizing it, or otherwise failing to train or supervise their subordinates—thereby giving rise to individual supervisory liability for the constitutional deprivations alleged herein.

104.    The actions and inactions of the defendants who played a supervisory role were deliberate and intentional, caused Mr. Walter's damages, and were committed with malice or reckless disregard for Mr. Walter's constitutional rights.

## IV.    CLAIMS FOR RELIEF

### A.    <u>Against the Fremont County Defendants: 42 U.S.C. § 1983</u>

105.    Plaintiff repeats, realleges, and incorporates all other paragraphs of this complaint as if fully set forth herein.

106.    As a result of the allegations contained in this complaint, the Fremont County Defendants—the Board of County Commissioners of the County of Fremont, Sheriff Beicker in his official capacity, and Undersheriff Martin in his official capacity—are subject to liability under 42 U.S.C. § 1983 for violating Mr. Walter's rights under the Fourteenth Amendment to the United States Constitution.

### B.    <u>Against the Corporate Defendants: 42 U.S.C. § 1983</u>

107.    Plaintiff repeats, realleges, and incorporates all other paragraphs of this complaint as if fully set forth herein.

108.    As a result of the allegations contained in this complaint, the Corporate Defendants are subject to liability under 42 U.S.C. § 1983 for violating Mr. Walter's rights under the Fourteenth Amendment to the United States Constitution.

**C.    Against the Individual Defendants: 42 U.S.C. § 1983**

109.    Plaintiff repeats, realleges, and incorporates all other paragraphs of this complaint as if fully set forth herein.

110.    As a result of the allegations contained in this complaint, the individual defendants are subject to liability under 42 U.S.C. § 1983 for violating Mr. Walter's rights under the Fourteenth Amendment to the United States Constitution.

111.    All of the individual defendants named in this complaint personally participated in the Fourteenth Amendment deprivations described herein.

112.    The individual defendants are liable under 42 U.S.C. § 1983 whether they actively participated in the constitutional deprivations, failed to intervene despite a duty and opportunity to do so, or acquiesced in the unconstitutional conduct by directing it, tacitly authorizing it, or failing to train or supervise their subordinates.

## V.    JURY DEMAND

113.    Plaintiffs hereby demand a trial by jury.

## VI.    PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray that the Court award against defendants:

A.    All available compensatory damages, including, but not limited to, all available damages for pain and suffering, physical, mental and emotional of the decedent, and all other non-economic and economic damages available under federal law;

28

B.      Punitive damages against all individual and corporate defendants;

C.      Attorneys' fees and costs;

D.      Prejudgment interest as appropriate; and

E.      Any such other relief that this Court deems just and equitable.

DATED this 17th  day of March, 2016.

Respectfully submitted,

BUDGE & HEIPT, P.L.L.C.

_____*/s/ Edwin S. Budge*_____

_____*/s/ Erik J. Heipt*_____

Edwin S. Budge
Erik J. Heipt
Budge & Heipt, PLLC
705 Second Ave., Suite 910
Seattle, WA 98104
ed@budgeandheip.com
erik@budgeandheipt.com
Attorneys for Plaintiff