IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-0629-WJM-MEH

THE ESTATE OF JOHN PATRICK WALTER,
by and through its personal representative, DESIREE' Y. KLODNICKI,

　　　　Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FREMONT;
JAMES BEICKER, individually and in his official capacity as Fremont County Sheriff;
TY MARTIN, individually; and
JOHN RANKIN, individually,

　　　　Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION *IN LIMINE*, AND REQUIRING FURTHER BRIEFING ON DEFENDANTS' MOTION *IN LIMINE***

　　　　By way of 42 U.S.C. § 1983, this lawsuit addresses whether John Patrick Walter ("Walter") received unconstitutionally deficient medical care while in pretrial detention in Fremont County, Colorado, eventually causing his death. Specifically, Walter was deprived of a prescription anti-anxiety medication (Klonopin), allegedly creating severe withdrawal symptoms that eventually killed him. Walter's Estate, through its personal representative ("Estate" or "Plaintiff"), originally sued numerous individuals and entities, but has now dismissed all defendants save for Fremont County (through its board of commissioners), Sheriff James Beicker, Undersheriff Ty Martin, and detention center commander John Rankin (together, "Defendants").

　　　　Currently before the Court is the Estate's Motion *in Limine* (ECF No. 231) and

Defendants' Motion in Limine (ECF No. 251).  For the reasons explained below, the Court grants in part and denies in part Plaintiff's motion and calls for further briefing on Defendants' motion due to changed circumstances since it was filed.

## I. PLAINTIFF'S MOTION *IN LIMINE*

### A. The Reasons for Walter's Arrest, the Charges Against Him, and Circumstances of the Alleged Crimes

Walter ended up in the Fremont County Jail on suspicion of assaulting a man named Harry Scott.  (ECF No. 231 at 3.)  Based on Defendants' proposed exhibits (including many relating to the charges against Walter) and witnesses (including Harry Scott), the Estate fears that Defendants intend to inflame the jury by portraying Walter in a negative and otherwise undeserving light.  (*Id.* at 3–4.)  The Estate argues that the reasons for Walter's arrest, the charges against him, and the circumstances surrounding his alleged crimes are irrelevant to the question of whether Walter received adequate medical care in the Fremont County Jail, are otherwise unduly prejudicial, and are also improper character evidence.  (*Id.* at 4–6.)

Defendants respond that they need this evidence to establish Walter's condition before arriving at the jail, allegedly to show that it was consistent with his behavior after arriving at the jail, and so to rebut the Estate's claim that jail staff could not help but notice Walter's distress and need for medical attention, as opposed to perceiving behavior that was, for Walter, typical.  (ECF No. 242 at 2–4, 5.)  Defendants also claim that Walter's physical, mental, and emotional condition before his arrest is relevant to damages, apparently implying that some of his injuries or distress are attributable to the incident leading to the assault charges.  (*Id.* at 4–5.)

Regarding the jail staff's perceptions, information about Walter's allegedly erratic

2

behavior before arrival at the Fremont County Jail is only relevant to the extent any particular jail staff member *knew* of that behavior. As for details about the crime Walter allegedly committed, Defendants fail to explain how those details could have any effect on any jail staff member's perception of his physical, mental, or emotional health—assuming the jail staff member knew those details. As for damages, Defendants' argument is vague and unconvincing, and strikes the Court as grasping at any straw to retain this evidence because Defendants do, in fact, wish to inflame the jury against Walter—which is impermissible under Rule 401, or is at least unduly prejudicial under Rule 403.

Nonetheless, the Court will permit the following testimony about Walter's behavior before being booked into the jail, and about his arrest:

- The *basic nature* of the accusation against Walter. This likely needs to be no more than the generic name of the charge (assault) and a very short description of the alleged behavior leading to the charge that does not obviously lay all blame on Walter (*e.g.*, "getting into a fight," as opposed to "starting a fight," "throwing a punch," etc.). The jury is entitled to understand those basic facts, for context. *See, e.g.*, *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995).

- Walter's demeanor, and physical and mental condition, before arriving at the jail *to the extent that* his demeanor/condition was perceived by, or specifically reported to, a person who: (A) observed Walter between the time of his admission and the time of his death, and (B) will testify that Walter's behavior in jail was unconcerning because of what he or she

3

perceived, or was told, about his behavior before his arrival.

Except to this extent, this portion of the Estate's Motion *in Limine* is granted.

**B.      Walter's Criminal and Incarceration History**

The Estate expects Defendants to introduce evidence of Walter's criminal and incarceration history, which the Estate argues to be irrelevant, unduly prejudicial, and impermissible character evidence.  (ECF No. 231 at 6.)

Defendants respond that the Estate is putting Walter's criminal history at issue because the Estate intends to introduce an exhibit in which Walter is recorded as reporting (apparently to booking officers) that he had a bad experience during a previous jail stay when jail officials tried to wean him from Klonopin.  (ECF No. 242 at 5 (citing ECF No. 242-3).)  Defendants accuse the Estate of "want[ing] to have it both ways by being allowed to introduce this evidence but then not allowing the Defendants to introduce evidence about Mr. Walter's criminal history."  (*Id.* at 6.)

Defendants' argument is difficult to understand.  Assuming the Estate introduces the exhibit, the Estate is not introducing it for any purpose that makes his criminal or incarceration history relevant.  The Estate is apparently willing to reveal to the jury that Walter has previously been jailed, but that does not "open to door" to any further evidence because the *contents or details* of his criminal or incarceration history do not make any fact at issue more or less likely.

If anything, Defendants' argument only further convinces the Court that Defendants are merely searching for words to obfuscate an intent to pursue a character assassination defense.  The Court will not tolerate such an approach to the trial.  *See Cox v. Wilson*, 2017 WL 1632506 (D. Colo. May 2, 2017) (in an excessive force case,

granting a new trial where the defense attorney disobeyed the Court's instructions not to mention the plaintiff's criminal history, of which the defendant was unaware at the time of the alleged excessive force).  This portion of the Estate's Motion *in Limine* is granted.

**C.    Other Requests**

The Estate makes four additional exclusion requests:

1. Evidence gathered after Walter's death of his reputation or character, such as reports that he was known to frequent a house suspected of hosting drug activity. (ECF No. 231 at 7–8.)  Defendants do not respond to this request and so the Court deems it confessed and grants it.

2. State-court probate pleadings, which address who might inherit any damages award.  (*Id.* at 8–9.)  This request was directed at another group of defendants who have since been dismissed.  The remaining Defendants agreed during the pre-motion conferral process to withdraw this exhibit.  (*Id.* at 8 n.4.)  Accordingly, this request is denied as moot.

3. Walter's employment history, educational history, and relationships with family members and others, which may show that he did not complete high school, did not maintain relationships with his children or their mothers, and was not often gainfully employed.  (*Id.* at 9.)[1]  Defendants do not respond to this request directly, although their response regarding Walter's pre-booking behavior mentions that Defendants expect the Estate to call Walter's girlfriend as a witness, for unclear purposes.  (ECF No. 242 at 4.) Even if the Estate calls the girlfriend, the Court can see no relevance to evidence about Walter's relationship with anyone else, his educational history, his employment history,

---

[1] The Estate represents that it does not seek damages for lost earnings or lost net accumulation.  (*Id.* at 2.)

and so forth. The Court will therefore grant this request.

4. Eliciting testimony that certain trial witnesses were once defendants in this case. (*Id.* at 10.) As with the probate records request, this request was directed at another group of defendants who have since been dismissed. The remaining Defendants agreed during the pre-motion conferral process that the parties should not mention any former defendant's status as such at trial. (*Id.* at 12.) Accordingly, this request is denied as moot.

## II. DEFENDANTS' MOTION *IN LIMINE*

Defendants' Joint Motion *in Limine* (ECF No. 251) is "joint" in the sense that it encompasses all defendants who had not been dismissed as of the date of its filing, September 25, 2018. The Estate has since dismissed a significant number of those parties. Accordingly, although the Court has a sense of which arguments likely still remain in play, the Court finds it prudent to require the Estate to submit an amended response brief announcing the matters it deems moot in light of intervening party dismissals, and responding only to the matters that remain in dispute between the Estate and Defendants.

## III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Motion *in Limine* (ECF No. 231) is GRANTED IN PART and DENIED IN PART as stated above;

2. On or before **April 1, 2019**, Plaintiff shall submit an amended response to Defendants' Joint Motion *in Limine* (ECF No. 251) stating which matters Plaintiff deems moot in light of intervening party dismissals, and responding only to the

matters that remain in dispute between Plaintiff and Defendants.  Plaintiff shall once again be limited to 6 pages, as calculated under WJM Revised Practice Standard III.C.1.

Dated this 18th day of March, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge