IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-0629-WJM-MEH

THE ESTATE OF JOHN PATRICK WALTER,
by and through its personal representative, DESIREE' Y. KLODNICKI,

    Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FREMONT;
ALLEN COOPER, in his official capacity as Fremont County Sheriff;
JAMES BEICKER, individually;
TY MARTIN, individually; and
JOHN RANKIN, individually,

    Defendants.

---

## ORDER GRANTING IN PART, DENYING IN PART, AND DENYING WITHOUT PREJUDICE IN PART DEFENDANTS' MOTION *IN LIMINE*

---

By way of 42 U.S.C. § 1983, this lawsuit addresses whether John Patrick Walter ("Walter") received unconstitutionally deficient medical care while in pretrial detention in Fremont County, Colorado, eventually causing his death. Specifically, Walter was deprived of a prescription anti-anxiety medication (Klonopin), allegedly creating severe withdrawal symptoms that eventually killed him. Walter's Estate, through its personal representative ("Estate" or "Plaintiff"), originally sued numerous individuals and entities, but has now dismissed all defendants save for Fremont County (through its board of commissioners), Sheriff Allen Cooper (in his official capacity only), former sheriff James Beicker (in his individual capacity only), former undersheriff Ty Martin, and detention center commander John Rankin (together, "Defendants").

Currently before the Court is Defendants' Joint Motion *in Limine*. (ECF No. 251.) It is captioned as "Joint" because it encompassed all defendants who had not been dismissed as of the date of its filing, September 25, 2018. Following its filing, the Estate dismissed several parties, leaving only Defendants. The Court therefore ordered the Estate to file an amended response to the motion, making clear which issues remain in controversy and which are moot in light of the settlement. (ECF No. 295 at 6.) Having received the Estate's amended response (ECF No. 296), the Court is prepared to rule. For the reasons explained below, the Court grants the motion in part, denies it in part, and denies it without prejudice in part.

## I. ANALYSIS

### A. Evidence of Inadequate Investigation

Defendants first argue that the Estate

> intends to introduce evidence in the form of testimony and exhibits to the effect that the Fremont County Sheriff's investigation into the circumstances of Mr. Walter's death was cursory or otherwise inadequate. The Court should exclude any such evidence because it is not relevant to any of the [Estate's] claims.

(ECF No. 251 at 3.) The Court disagrees. The Estate must prove that Defendants possessed a deliberately indifferent state of mind. Evidence about how they reacted to Walter's death is probative of that state of mind. *See Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985). Defendants' case law that supposedly counsels to the contrary—*Durkee v. Minor*, 841 F.3d 872, 877 (10th Cir. 2016), *Bryson v. City of Oklahoma City*, 627 F.3d 784, 789–90 (10th Cir. 2010), and *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009)—affirms exclusion of this kind of evidence when presented as evidence of *causation*, reasoning that post-event actions, by definition,

have no tendency to prove the cause of an event.  That is a separate question from whether post-event actions can shed light on the actors' state of mind during the event.  Plainly, they can.  The Court therefore denies this portion of Defendants' Motion *in Limine*.

That said, the Court notes the *possibility* that lay jurors may not be able to judge for themselves whether a post-incident investigation of a medical matter at a county jail was adequate.  In other words, depending on the evidence the Estate intends to present, it may be that a lay juror has no common experience to which he or she can compare the investigation, and therefore no basis to properly judge any Defendant's state of mind based on his acts or omissions during the investigation.  Without prejudging the issue, then, the Court notes the potential need for expert testimony to lay a proper foundation.

**B.     Other Inmates' Medical Care**

Defendants note that the Estate plans to call three former inmates at the Fremont County Jail for purposes of testifying about their experience receiving medical care at the jail, presumably to persuade the jury that the jail routinely provided inadequate medical care.  (ECF No. 251 at 4.)  Defendants argue that this should not be permitted because, at a minimum, it "would create the necessity for multiple 'mini-trials' within the trial which [would be] misleading, confusing, and would be a waste of time."  (*Id.* at 4–5.)

The Estate's entire response is as follows:

> Defendants' request to exclude evidence of "other inmates' medical care" is vague.  In any event, Defendants ignore discussion of the all-important *Monell* claims, which are supported by evidence of widespread practices.  There will be no mini-trials, for the Estate's proof is concise: jail personnel and others knew that inmates' legitimate requests for care were often ignored.

3

(ECF No. 296 at 4.)

The Court is unconvinced by the Estate's response. It presumes that the inmates' requests for care were indisputably "legitimate," but the Court can see no reason why Defendants would not be entitled, as a matter of due process, to challenge that. Such a challenge would indeed raise the specter of a "mini-trial" as to each witness's experience. Even if the Court were to permit that, the experience of three inmates has very little tendency to make the existence of a custom or policy more or less likely, and is, instead, more likely to cause unfair prejudice, confuse the issues, or mislead the jury.[1] The Court therefore grants this portion of Defendants' Motion *in Limine*.

## C.    Autopsy Photos

Defendants say that the Estate plans to introduce 47 photographs showing both the outside and inside of Walter's body during his autopsy. (ECF No. 251 at 6.) Defendants argue that introducing all 47 photos would be needlessly cumulative. (*Id.* at 6–7.) Defendants further argue that the photos would be irrelevant because the Estate's "theory of this case is that Mr. Walter passed away as the result of withdrawal from the benzodiazepine commonly known as Klonopin. There is nothing in the autopsy photos that would aid the jury in evaluating that theory. It is not possible to visually see the purported effects of Klonopin withdrawal." (*Id.* at 7.) Finally, Defendants argue that the photographs should at least be excluded as unfairly prejudicial. (*Id.*)

The Estate responds that it plans to present two sets of autopsy photos. The first

---

[1] Notably, the Estate does not say that the three inmates in question are somehow particularly relevant due to timeframe, symptoms, personnel on duty when those symptoms arose, and so forth.

4

set includes only external photos:

> They show separate parts of his body—his left foot, right foot, toes, shins, hands, buttocks, torso, face, elbows. The photos show: (a) his emaciated appearance and extreme weight loss (roughly 30 pounds in 17 days); (b) his obvious bruises, contusions, scrapes, cuts and undressed wounds; (c) the extraordinary contrast from his booking appearance 17 days earlier; (d) the spuriousness of any claim that he was not in need of medical care; and (e) his suffering.

(ECF No. 296 at 5.) "Former detention deputies will testify that the photos accurately show his appearance for at least the last 24 hours of his life," because Walter was completely naked during that time and so his external condition was easily visible. (*Id.* at 4–5.)

The Estate's second set of photos includes only internal photos. The Estate says that they

> are few and are carefully selected from dozens. They are limited to two categories and will be used with the medical examiner's testimony. They show (a) his broken ribs; and (b) his significant internal bleeding and hemorrhaging—conditions existing before his death. They prove his serious medical needs, illustrate his suffering, and wholly refute any allegation that he was uninjured or not in need of medical care.

(*Id.* at 5.)

The Court will make no ruling at this time as to either set of photos because the Court has an inadequate understanding of the Estate's theory of liability specifically against these Defendants, and a similarly inadequate understanding of Defendants' theory of defense. More specifically, if the Estate's theory is that Walter died of benzodiazepine withdrawal, then there is at least a question whether external injuries like scrapes, cuts, and undressed wounds have any relevance—unless these were self-inflicted injuries flowing from symptoms of benzodiazepine withdrawal. But, as yet, the

5

Court has seen no evidence of that. And the internal photos, in particular, show things that no one observed before his death. Moreover, it is not clear whether Defendants are asserting that Walter had no need for medical care.

For all these reasons, the Court denies Defendants' motion as to both sets of photos, without prejudice to renewal during trial. Should Defendants renew their objection, the Court will be particularly looking for a tight, easily discernible connection between the photo(s) in question and the issue(s) for the jury to decide. The Court will also be particularly concerned about needless presentation of cumulative evidence.

Finally, the Court observes that the Estate response brief shows it has pared down the 47 photographs described by Defendants to some lesser number. Accordingly, in the revised exhibit list the Estate must file under WJM Revised Practice Standard IV.B.4.b, the Estate shall omit all photos it has decided not to use.

**D.     Rankin's Former Relationship with Maestas**

Defendant Rankin previously had a romantic relationship with former defendant Maestas, one of the nurses at the jail. The relationship ended sometime before events leading to this lawsuit. Maestas was "apparently still married" to someone else at the time. (ECF No. 251 at 9.) Defendants argue that evidence about that relationship is irrelevant or at least unfairly prejudicial, because jurors "may unfairly judge" Rankin and Maestas (in her capacity as a witness) "based on decisions made in their personal lives which have no bearing on whether Mr. Walter was provided with adequate medical care in the jail." (*Id.*)

The Estate responds,

> There will be no "smearing" or disrespect. The Estate will elicit little testimony, if any, about the relationship during the Estate's case-in-chief. But the evidence is relevant on cross

6

> or re-direct of defense witnesses because it (a) helps explain why Defendant Rankin did not fulfill his duty to get medical care for Mr. Walter when he knew the head nurse was not doing it; (b) helps explain why Defendants Beicker and Martin (both of whom knew of the relationship) did not instruct Defendant Rankin to take action in the face of the head nurse's refusals; (c) could show bias with regard to the testimony of Defendant Rankin about the head nurse—and vice-versa; (d) helps explain why detention deputies (who knew of the relationship) did not subvert the chain of command to get Mr. Walter to the hospital; and (e) provides additional improper motive for the failure to investigate.

(ECF No. 296 at 5–6.)

As with the issue about the autopsy photos, the Court does not believe it has a sufficient grasp of the parties' theories to understand the potential relevance of the relationship between Rankin and Maestas. The facts and theories to which the Estate's response alludes are not facts or theories of which the Court has previously been aware. The Court can see, for example, that evidence about Rankin's and Maestas's relationship, and even a former relationship in some circumstances, could be relevant to explain why Rankin "took it easy" on Maestas—assuming he did. The Court frankly does not know and must await the evidence as it comes in.

The Court therefore denies this portion of Defendants' motion without prejudice to renewal during trial. The Court will, again, specifically be looking for a tight connection between the information in question and the issue(s) for the jury to decide. Evidence that will have a significantly more scandalous than probative effect will be excluded.

**E.     "Medical Opinions from Lay, Non-Medical Witnesses"**

Defendants argue that lay witnesses such as "jail staff . . . , inmates . . . , and any other non-medical witnesses are not qualified to offer medical opinions, including, but

7

not limited to, criticisms about Mr. Walter's care or opinions about causation, and this Court should order that all lay witnesses be barred from offering such testimony at trial." (ECF No. 251 at 10.) The Court agrees with the Estate, however, that this request "is vague and unworkable as a pretrial ruling." (ECF No. 296 at 6.) Lay witnesses may appropriately offer an opinion on a matter that is:

> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. With a proper foundation establishing what the witness personally observed, some medical matters may be appropriate for lay opinion, particularly as to basic, non-diagnostic questions such as whether a person *appears* injured or in distress. Even some medical causation questions might be properly addressed through lay opinion (*e.g.*, the witness saw someone hit their head and then saw a bruise develop at that very location). Thus, the Court cannot say at this point whether any particular lay witness's "medical opinion" is proper or improper. This portion of Defendants' motion is denied without prejudice to renewal during trial.

## II. CONCLUSION

Defendants' Joint Motion *in Limine* (ECF No. 251) is GRANTED IN PART, DENIED IN PART, and DENIED WITHOUT PREJUDICE IN PART, as stated above.

Dated this 7th day of August, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge