IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-0629-WJM-MEH

THE ESTATE OF JOHN PATRICK WALTER,
by and through its personal representative, DESIREE' Y. KLODNICKI,

    Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FREMONT;
ALLEN COOPER, in his official capacity as Fremont County Sheriff;
JAMES BEICKER, individually;
TY MARTIN, individually; and
JOHN RANKIN, individually,

    Defendants.

## ORDER RESERVING RULING ON DEFENDANTS' MOTION TO AMEND

By way of 42 U.S.C. § 1983, this lawsuit addresses whether John Patrick Walter ("Walter") received unconstitutionally deficient medical care while in pretrial detention in Fremont County, Colorado, eventually causing his death. Specifically, Walter was deprived of a prescription anti-anxiety medication (Klonopin), allegedly creating severe withdrawal symptoms that eventually killed him. Walter's Estate, through its personal representative ("Estate" or "Plaintiff"), originally sued numerous individuals and entities, but has now dismissed all defendants save for Fremont County (through its board of commissioners), Sheriff Allen Cooper (in his official capacity only), former sheriff James Beicker (in his individual capacity only), former undersheriff Ty Martin, and detention center commander John Rankin (together, "Defendants," but sometimes referred to in quoted materials as the "County Defendants").

Currently before the Court is Defendants' Motion for Leave to Amend their Answer, Defenses, and Affirmative Defenses. (ECF No. 304.) The pertinent background is as follows.

The Court entered the Scheduling Order on May 31, 2016, setting an August 1, 2016 deadline for amendment of pleadings. (ECF No. 81 at 20.) The Estate filed its currently operative complaint, the Second Amended Civil Rights Complaint and Jury Demand ("Complaint"), on June 16, 2016. (ECF No. 84.) Defendants answered the Complaint ("Answer") on June 30, 2016. (ECF No. 88.)

The Answer lists eighteen affirmative defenses. (*Id.* at 39–41.) The affirmative defenses do not include the concepts of offset or comparative diminishment based on other parties' settlements or amounts owed, or any equivalent concept. The last affirmative defense, however, is an announcement that "Defendants incorporate by this reference all applicable affirmative defenses and defenses asserted by any other Defendant in this action." (*Id.* at 41, ¶ 18.)

On July 8, 2016, a group of defendants usually referred to by the parties as the "CHC Defendants" answered the Complaint. (ECF No. 93.) Among the CHC Defendants' affirmative defenses was that "Plaintiff's injuries and damages, if any, are the result of Decedent's own acts or omissions independently or in combination with the acts or omissions of third parties, which bars or comparatively diminishes Plaintiff's right of recovery against CHC Defendants." (*Id.* at 34, ¶ 9.) In a separate section following the affirmative defenses, the CHC Defendants also explicitly asserted their rights to contribution under Colorado law "[i]n the event of a settlement between Plaintiffs and any other defendant." (*Id.* at 35–36.)

The August 1, 2016 deadline for amendment of pleadings came and went with no further amendments from any party.

The Final Pretrial Order entered in December 2017, and Defendants "incorporate[d] all denials and defenses asserted [in the Answer]" into that order. (ECF No. 204 at 10.)

In October and November 2018, the CHC Defendants settled with the Estate for $4.25 million. (*See* ECF Nos. 280, 282–86, 288–90; ECF No. 304 ¶ 4.) The final stipulation of dismissal in this regard was filed on November 26, 2018. (ECF No. 290.)

Defendants filed the motion currently under consideration on June 21, 2019. (ECF No. 304.) In light of the settlement, Defendants ask to "expressly include [the offset] defense" as part of the Answer (*id.* ¶ 8), apparently in contrast to the incorporation-by-reference already noted. More specifically, Defendants seek leave to amend the Answer to add the following affirmative defense: "Plaintiff's claims are barred or limited by the doctrine of offset, including, but not limited to, offset as a result of settlement with former parties to this litigation or third parties." (ECF No. 304 at 6.) Defendants further state that an offset defense would have no effect on trial because Defendants would only assert it through a posttrial motion, in the event of an adverse jury verdict. (*Id.* ¶ 13.)

Trial is scheduled to begin on September 30, 2019. (ECF No. 294.)

Defendants' motion raises several potentially difficult issues, including:

- whether it is permissible to incorporate other parties' affirmative defenses by reference;
- whether offset is a permissible affirmative defense to § 1983 damages,

*see, e.g.*, *Restivo v. Hessemann*, 846 F.3d 547, 581–87 (2d Cir. 2017) (holding that offset is unavailable), *cert. denied*, 138 S. Ct. 644 (2018);

- whether Defendants state "good cause" under Federal Rule of Civil Procedure 16(b)(4) to amend the Scheduling Order, see *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014); and

- whether amendment should be allowed under Federal Rule of Civil Procedure 15(a)(2).

All of these issues are premature, however, absent a damages verdict for the Estate.

The Estate does not argue that *if* it obtains a verdict, it would *still* be impermissible to handle offset through a posttrial motion, as Defendants propose. The Estate instead argues (in addition to all of the possible attacks listed above) that it would suffer prejudice in at least three ways even if offset is merely a posttrial possibility.

First, the Estate says it has been deprived of the opportunity to challenge the defense earlier through a dispositive motion. (ECF No. 306 at 10–11.) But there is no reason why it could not also challenge the defense through a posttrial motion, or in a response brief to a motion from Defendants.

Second, the Estate says it

> would also be prejudiced because it made important strategic litigation and settlement decisions in reliance on the County Defendants' failure to plead offset. It would not be appropriate to comment about the specifics of confidential settlement negotiations or counsels' though processes other than to say that the County Defendants are still in the case, and their failure to plead offset was an important consideration in the Estate's decision to settle with other parties. The settlement is final and irreversible, and allowing the affirmative defense of offset now would be supremely

4

unfair.

(*Id.* at 11.)  This only shows that the Estate took a risk—a risk that Defendants would not later seek to rely on incorporation by reference, that this Court would rule that incorporation by reference is not permissible for affirmative defenses, that "good cause" is otherwise lacking, etc.  Although the Estate's settlement calculus may ultimately be relevant, it is nonetheless a risk the Estate took, and the Court has no duty to shield the Estate from the downside of those risks.

Third, the Estate says it would suffer further prejudice because it has expended significant time preparing for trial under the assumption that offset would not be an issue.  (*Id.* at 11–12.)

> These [trial preparation] efforts are many and myriad.  They have occurred over a period of months and are ongoing.  They concern discreet questions about which issues to focus on, what evidence to present and how to present it, and other factors that go into trying the case in a certain way.
>
> In making these decisions, the Estate's counsel have been fully aware that the County Defendants did not plead offset, and this fact has been part of shaping the Estate's trial preparations.  It would be prejudicial and unfair to permit the County Defendants to add a defense that forces the Estate's counsel to significantly alter the nature of the preparations they have made in the [preceding] months since the character of the case changed [through the CHC Defendants' settlement].

(*Id.*)  And in a footnote, the Estate continues,

> There are conspicuous differences between how a case might be presented depending on whether and how an offset defense had been plead.  Among these are issues of punitive and compensatory damages, since punitive damages would not be offset whereas compensatory damages theoretically could be.  But even with regard to compensatory damages, there are numerous ways a case might be tried differently depending on whether offset had been plead, since offset could theoretically apply to some

5

> harm caused by combined acts or omissions of some people but not harm caused by separate acts or omissions of other people.

(*Id.* at 12 n.4.) Despite the profusion of words, the Court does not see the "conspicuous differences between how a case might be presented depending on whether and how an offset defense ha[s] been plead," particularly when the jury will not be told about the settlement.

For all these reasons, the Court RESERVES RULING on Defendants' Motion for Leave to Amend their Answer, Defenses, and Affirmative Defenses (ECF No. 304) until such time, if ever, that the jury returns a damages verdict for the Estate and against Defendants.

Dated this 7th day of August, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge